**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID COURTER,<br><br>              Plaintiff,<br><br>v.<br><br>BOROUGH OF ROSELAND and RICHARD McDONOUGH, in his professional and personal capacities, jointly and severally,<br><br>              Defendants. | Civ. No. 06-149 (DRD)<br><br>**O P I N I O N** |

*Appearances:*

METS & SCHIRO, LLP
By: Roosevelt Porter
    Bryan J. Manetta
655 Florida Grove Road
Woodbridge, NJ 07095

    *Attorneys for Plaintiff,*

SAIBER, SCHLESINGER, SATZ & GOLDSTEIN, LLC
By: David Andrew Cohen
One Gateway Center 13th Flr
Newark, NJ 07102

    *Attorneys for Defendant Borough of Roseland,*

GOLDEN, ROTHSCHILD, SPAGNOLA, LUNDELL, LEVITT & BOYLAN, PC
By: Gary S. Spagnola
1011 Route 22 West
Suite 300
Bridgewater, NJ 08807

*Attorneys for Defendant Richard McDonough.*

**DEBEVOISE, Senior District Judge**

On December 8, 2005, plaintiff, David Courter ("Courter"), brought this action against defendants Borough of Roseland ("Roseland") and Richard McDonough ("McDonough," collectively, the "Defendants") pursuant to 42 U.S.C. § 1983, seeking damages for alleged retaliation for exercising his First Amendment rights, as well as numerous state-law causes of action. Defendants have each filed a motion for summary judgment (the "Motions"). For the reasons set forth below, the Motions will be granted with regard to the 42 U.S.C. § 1983 claims, which are all of Courter's federal claims, and the Complaint as to them will be dismissed with prejudice. The remaining state causes of action will be remanded to the Superior Court of New Jersey.

## I.  BACKGROUND

Plaintiff, David Courter, has been employed as a police officer by the Roseland Police Department since April 1, 1994. He filed a complaint in the Superior Court of New Jersey on December 8, 2005, claiming damages for alleged acts of retaliation against him. The Defendants removed the action on January 12, 2006.

On May 4, 1996, Courter arrested Christopher Critchett, the then Chief of Police's son. Critchett was speeding and evading arrest. Courter testified during his deposition that McDonough and other police officers told Courter to charge Critchett only for driving while

intoxicated ("DWI"). Despite McDonough's alleged demand, Courter charged Critchett with DWI, alluding, resisting arrest and disorderly conduct, as well as other motor vehicle charges. Courter testified during his deposition that he charged Crichett with these charges to avoid liability from a possible lawsuit. Following this incident, Courter was assigned to desk duty, where he alleges that he was ridiculed by coworkers. Additionally, Courter testified during his deposition that he was denied all access to patrol cars during this assignment. Courter further testified that he believes his desk duty assignment was in retaliation for his refusal to drop the extra charges against the Police Chief's son. However, Roseland Police Department records indicate that Courter was assigned to the desk because of four motor vehicle accidents, which occurred while Courter was on duty. The last of these accidents occurring during the arrest of Critchett. Furthermore, Courter testified that McDonough told him that, if McDonough became Police Chief, he would never allow Courter to become a Sergeant. Additionally, Courter was required to take an eye exam before rejoining patrol duty. Courter testified that requiring an eye exam was demeaning and in further retaliation for his refusal to drop the additional charges against Crichett. When Courter delayed in receiving the eye examination, he was charged with insubordination. Courter claims that this was in further retaliation for his refusal to drop Critchett's charges.

On April 23, 2005, Courter was asked to order confidential license plates for a vehicle he knew to be operated by a public official. Since Courter believed that ordering the plates would constitute fraud, he consulted his lawyer. Subsequently, the lawyer wrote a letter to Roseland's attorney demanding an explanation. Roseland's attorney explained that the car was used for confidential internal affairs, that Courter should have realized that the matter should have

3

remained confidential, and that the breach in confidentiality could have affected the safety of the officers assigned to this internal affairs duty. Courter received a performance notice due to this incident. Courter testified during his deposition that this notice was in retaliation for his refusal to order confidential plates.

Courter is a member of the Patrolmen's Benevolent Association ("PBA") and has served as the union's president. However, since January 1, 2003, the Fraternal Order of Police ("FOP") has been the exclusive bargaining representative for the Roseland Police Department. Courter testified during his deposition that he believes the Roseland Police Department has retaliated against him and other members of the PBA for their participation in the PBA. Courter further testified that he believes the retaliation is primarily because McDonough, the Roseland Police Chief, was expelled from the PBA and later joined the FOP.

On March 6, 2003, Courter was charged with failure to maintain a Class A uniform. Although he was notified that he would have to wear his Class A uniform for a promotion ceremony, the uniform was dirty and had to be laundered. The Department notified him that he would have to present his uniform for inspection on March 6, 2003. However, Courter testified that the dry cleaner had broken a button on his uniform and that he did not have an opportunity to repair his uniform before the inspection. Although he was told to present his uniform without sewing on a new button and that he could replace the button at another time, Courter was nonetheless charged with failure to maintain a Class A uniform. Courter testified that he was the only officer in the Roseland Police Department to be charged with failure to maintain a Class A uniform and that the charge was in retaliation for his association with the PBA.

On October 30, 2005, Courter was charged with improper conduct and suspended for

three days.  The investigation found that Courter was rude and curt to three citizens while responding to a call.  Courter claims that the length of his suspension was in retaliation for his activities in the PBA.  However, the Defendants assert that the decision to suspend Courter was based on numerous entries in his personnel file concerning his demeanor with the public.  Again, on February 7, 2006, Courter was suspended for one week after an additional charge for improper conduct.  Courter testified during his deposition that the harshness of this suspension was motivated by retaliation against Courter's involvement with the PBA.  However, Courter appealed this matter to the Superior Court of New Jersey, which affirmed the decision of the disciplinary committee.

     Furthermore, Courter testified during his deposition that he was denied training requests in retaliation for his association with the PBA (although he had received the amount of training that the Roseland Police Department is required to provide).  In January 2002, the Roseland Police Department denied Courter's request for training to be a radar instructor.  Although he was told that patrolmen cannot be instructors, at least one officer for the Roseland Police Department is a radar instructor.  Additionally, the Roseland Police Department denied Courter's request to attend a pedestrian bicycle crash investigation course, a commercial vehicle accident investigation course, shotgun armorer recertification, and a Motorcycle Officer's course.

     Additionally, Courter testified during his deposition that he was improperly denied promotions on three occasions in retaliation for his activities in the PBA.  In 2003, the officer that was recommended by McDonough for promotion to Sergeant had an equal score in her evaluation to Courter but was a less senior officer than Courter.  McDonough discredited both officers' evaluations, claiming that the other officer, who received the promotion, should have

received higher scores in the evaluations. Again, in 2004, Courter was not given a promotion. Instead, an officer, who joined the Roseland Police Department only three years before, was promoted to Detective Sergeant. Courter contends that it would have been more appropriate to promote a Sergeant to Detective Sergeant, leaving a Sergeant spot for Courter. Defendants, however, argue that no such lateral move from Sergeant to Detective Sergeant has ever been conducted in the police department. Finally, in 2005, five sergeant positions were filled. However, Courter was not promoted, despite being the most senior member of the Roseland Police Department eligible for promotion. Courter testified during his deposition that he believes he was denied these promotions in retaliation for his participation in the PBA.

     Moreover, Courter testified during his deposition that he was given improper assignments because of his association in the PBA. He testified that McDonough ordered Courter to check the operation of the streetlights in his district. Although other officers have been assigned such duties, Courter contends that this is not a common assignment. Additionally, Courter was assigned to test the effectiveness of the mobile video camera system from February, 2002, till the end of March. In 2005, the Roseland Police Department denied Courter's request to be transferred to the Detective Bureau. However, the Roseland Police Department had allowed many officers with less seniority than Courter to be transferred to the Detective Bureau. Finally, in March, 2006, Courter was forced to patrol with a supervisor because, according to the Roseland Police Department, of his bad attitude.

     Furthermore, Courter filed four grievances with the FOP, all of which were refused. Courter maintains that these refusals were in retaliation for his association with the PBA. The first, in November 2003, concerned three incidents where Courter was denied running a shift

command. On this occasion, McDonough allegedly threatened Courter, telling him that continually filing grievances was not looked upon kindly. The second, in January 2005, was a complaint about a newly instituted policy that assigned road job assignments according to a rotating list. However, Courter was unaware of this new policy and did not update his contact information to include his cellphone number so that he could be contacted on such short notice. Therefore, he allegedly missed an opportunity to be assigned a road job. Third, in February 2005, Courter testified that he was denied an additional opportunity for a road job. Courter alleged that the Department's policy required contacting off-duty officers from the rotating list to a broken water main. However, two on-duty officers were held overtime at the broken water main. Finally, on March 29, 2005, Courter complained about an overtime slot was being covered by a dispatcher rather then an officer.

## II.  DISCUSSION

The record paints a picture of acrimony and controversy, between Courter and his superiors and other officers, but there is no evidence of retaliation which would support Courter's claims under § 1983. The remaining claims involve New Jersey and should be decided by New Jersey courts.

**A.  Summary Judgment Standard**

Summary Judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the

applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Hunt v. Cromartie, 526 U.S. 541, 552 (1999), quoting, Anderson, 477 U.S. at 255. But where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the District court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (U.S. 1986).

**B. First Amendment Rights**

Courter claims that he is entitled to relief because "a public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250 F.3d 188, 194 (3rd Cir.2001). "While the government's role as employer . . . gives it a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large, this hand cannot act with impunity." Id. Therefore, "public employers cannot silence their employees simply because they disapprove of the content of such speech." Id. Courts employ a three step analysis when balancing the First Amendment rights of public employees against the competing interests of their employers: (1) plaintiff must establish that the activity in question was protected (if it is purely personal in nature then it is not protected; if it is a matter of public concern then it is protected); (2) if the speech in question is protected, plaintiff must demonstrate that his interest in the speech outweighs the state's countervailing interest as an employer in

promoting the efficiency of the public services it provides through its employees; and (3) if a public employee's speech concerns a matter of public concern, and the balance of harm weighs in favor of the employee's expression, "plaintiff must then show that the protected activity was a substantial or motivating factor in the alleged retaliatory action." Id. at 195.

If the plaintiff can establish that his/her speech is a matter of public concern, the court proceeds to the second step of the process. Brennan v. Norton, 350 F.3d 399, 413 (3rd Cir. 2003). "The plaintiff must then 'demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees.'" Id. at 413 (quoting Baldassare, 250 F.3d at 195). This inquiry is purely legal and is therefore decided by the court as a question of law. Id. Courts must balance the speaker's First Amendment interest against any injury the public employer may suffer as a result of that expression. Id. (citing Baldassare, 250 F.3d at 197). "On the one side, we weigh the public employee's interest in speaking about a matter of public concern and the value to the community of [him/]her being free to speak on such matters." Id. (citing Azzaro, 110 F.3d at 980). "Balanced against these interests is the government's interest as an employer in promoting the efficiency of the services it performs through its employees." Id. "Only if the value of the speech, as measured by the employee's and the public's interests, is outweighed by the government's interest in effective and efficient provision of services, will [a court] hold that the speech is unprotected." Id.

This leaves only the third step in the analysis. If a "public employee's speech concerns a matter of public concern, and the balance of harm weighs in favor of the employee's expression, 'plaintiff must then show that the protected activity was a substantial or motivating factor in the

alleged retaliatory action.'" Brennan v. Norton, 350 F.3d at 414 (quoting Baldassare, 250 F.3d at 195). However, a plaintiff will not necessarily prevail even if he/she is able to clear this last hurdle. "[T]he public employer can [still] rebut the claim by demonstrating it would have reached the same decision . . . even in the absence of the protected conduct." The question is "whether the record supports a finding that the [plaintiff's] expression caused any of the defendants to retaliate against [the plaintiff] for that expression." Brennan, 350 F.3d at 414.

i. **Public Concern**

Courter has not offered evidence that he was retaliated against for an expression of protected speech. In order for a public employee's speech to be protected, it must be a matter of public concern. Baldassare v. New Jersey, 250 F.3d 188, 195 (3rd Cir. 2001). Whether an employee's speech addresses a matter of public concern is determined by the content, form, and context of that speech. Id. "The content of the speech may involve a matter of public concern if it attempts to 'bring to light actual or potential wrongdoing.'" Id. (quoting Holder v. City of Allentown, 987 F.2d 188, 195 (3rd Cir. 1993)). The form and context demonstrate a public concern if the speech "is not merely confined to the public office where the speaker is employed." Holder, 987 F.2d at 195 (citing Connik v. Meyers, 461 U.S. 168, 148-49 (1983)).

Courter claims two incidents of retaliation for engaging in protected speech: (1) his refusal in 1996, to drop the charges against the then Police Chief's son and (2) his refusal to order confidential plates in 2005. However, the content of these incidents indicates that they are not a matter of public concern because Courter never attempted to "bring to light actual or potential wrongdoing." Baldassare, 250 F.3d at 195 (quoting Holder, 987 F.2d at 195). Additionally, the form and context of these two incidents also indicate that they do not involve a public concern

because Courter communicated his grievances entirely within the Roseland Police Department. Although Courter did contact a lawyer to dispute his assignment to order confidential plates in 1995, the lawyer merely wrote a letter to the Roseland Police Department's lawyer. The dispute was "confined to the public office where" Courter worked. Holder, 987 F.2d at 195. Therefore neither incident is a matter of public concern which is protected from retaliation.

Additionally, speech will not be considered a matter of public concern if "the speech was aimed at advancing a personal interest." Nittoli v. Morris County Bd. of Chosen Freeholders, No. 05-4007, 2007 U.S. Dist. LEXIS 37536, at *13 (D.N.J. May 21, 2007). Courter testified that he refused to drop the additional charges against Critchett in 1996 in order to prevent being liable in a possible lawsuit. Although his intentions may have been commendable, this is a matter of private interest. Id. Similarly, Courter's refusal to order confidential plates for a vehicle was not intended to advance a public concern, rather, to protect his private interest in not committing fraud. Therefore, neither incident is a matter of public concern that is protected from retaliation.

However, retaliation for participation in union activities is protected by the First Amendment's Freedom of Association clause if the union is involved in issues affecting a public interest. Smith v. Ark. State Employees, 441 U.S. 463, 465 (1979). Courter provides evidence, in the form of his own deposition, that he was discouraged from participating in the PBA. Thus, any PBA-related retaliation is a matter of public concern.

**ii. Proof of Retaliation**

However, there is no evidence which would create a genuine issue of material fact that any of the Courter's alleged incidents occurred as retaliation, aside from Courter's own deposition in

which he merely states his opinion that he believes that the disciplinary and other actions were in retaliation. Speculative and conclusory statements do not raise genuine issues of material facts to deny a motion for summary judgment. See Liotta v. Springdale, 985 F.2d 119, 122 (3rd Cir. 1994). Courter has not offered specific examples of how the Roseland Police Department has systematically treated PBA members unfairly. Therefore, while the evidence may establish that the managers of the Roseland Police Department had a general dislike for Courter and were dissatisfied with his work, there is no evidence of retaliation for Courter's activities in the PBA.

Moreover, the disciplinary acts, assignments, promotions and training requests not only conformed with the departmental guidelines but were also justified. To defeat a motion for summary judgment, a plaintiff must point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Griesbaum v. Aventis Pharmaceuticals, 2007 WL 4480624, at *6 (3rd Cir. 2007) (citing Shaner v. Synthes, 204 F.3d 494, 501 (3rd Cir. 2000). In this case, Courter has offered no evidence to show that the Roseland Police Department was not asserting legitimate concerns which negatively affected Courter's employment. Therefore, the record does not support a genuine issue of material fact that the Roseland Police Department retaliated against PBA members.

The Roseland Police Department had a duty to discipline Courter for his poor demeanor. Although Courter testifies during his deposition that the punishment was more severe than necessary, he offers no evidence to show that he was treated worse than other similarly situated officers. On one occasion, the Superior Court of New Jersey affirmed the Roseland Police

Department's determination and found that the strict sentence was appropriate. Furthermore, the letter of reprimand following Courter's refusal to order the confidential plates was in response to inappropriately releasing the confidential information. Additionally, Courter testified that he was the only officer ever charged with failure to maintain a Class A uniform. However, he does not offer any evidence that any officer ever had failed to wear a Class A uniform when required and then upon a later inspection failed to have the uniform in proper order. Nothing from the record indicates that these punishments are for any reason other than Courter's own misconduct.

Similarly, Courter claimed during his deposition testimony that the Roseland Police Department improperly assigned him to demeaning jobs as retaliation for his involvement in the PBA. However, this claim is unsubstantiated. Indeed, a memorandum dated May 9, 1996, explained that Courter was assigned to desk duty and required to have an eye examination in 1996 because of four on-duty car accidents. Courter offers no evidence to show that the official reasons are merely stated as a pretense. The Roseland Police Department is justified in confining a patrolman to the desk and refusing him access to patrol cars because of a high number of accidents. Furthermore, requiring an eye exam would be an appropriate safety measure in such circumstances.

Additionally, Courter offers no evidence that the Roseland Police Department's decision not to promote Courter was in retaliation for Courter's participation in the union, and two other PBA member officers were promoted. Furthermore, the memoranda from the high-ranking officers charged with evaluating prospective officers indicate that Courter was not suggested for promotion because of his poor demeanor with the public. Since Courter does not present any evidence that his demeanor was not of paramount concern in denying his promotion, he cannot

establish that denying him a promotion was retaliatory.

Moreover, the Roseland Police Department gave sufficient explanation to denying Courter's requests for training. Many of the training requests were unreasonable. For instance, he was denied motorcycle training, but the Roseland Police Department did not even have a motorcycle squad at the time. Although some of the training requests appear to be legitimate and still denied, Courter did receive all mandated hours of training. The fact that additional hours of training were not granted does not show maltreatment. Again, Courter does not offer any evidence that these refusals were in retaliation for his activities in the PBA. Furthermore, he has not shown that he was denied training in a manner or as a policy which does not affect every police officer in the force.

Therefore, since Courter has failed to produce evidence creating a genuine issue of material fact that he was retaliated against for participating in the PBA, any claim under 42 U.S.C. § 1983 will be dismissed.[1]

## C. State-law Claims

In his complaint, Courter alleges he is entitled to an award under the common law of New Jersey and several New Jersey statutes. When all of the federal-law claims have been disposed of in a removed action, the district court has "discretion to retain or remand the remaining state law

---

[1] In view of the conclusion that Courter has failed to produce evidence that would support a jury finding that the acts of which he complains were taken in retaliation for him expressing free speech rights or maintaining membership in the PBA, it is unnecessary to address Defendants' alternative grounds for summary judgment on the federal claims, namely, the bar of the statute of limitations, the municipality's immunity from liability under Monell v. Dept. of Social Servs., 436 U.S. 658 (1978), unavailability of punitive damages, and the Police Chief's entitlement to qualified immunity.

claims." Coefield v. GPU, 125 Fed. Appx. 445, 448 (3rd Cir. 2005) (citing Carnegie-Mellon Univ. V. Cohill, 484 U.S. 343, 357 (1988)). In such a case, the district court should review its exercise of supplemental jurisdiction according to 28 U.S.C. § 1367(c).[2] Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 787 (3rd Cir. 1995). At least two reasons for not extending jurisdiction apply here: the state claims substantially predominate over the claims over which the Court has original jurisdiction and the district court has dismissed all claims over which it has original jurisdiction. In light of the particular interest the state has in shaping and interpreting its own laws against discrimination and retaliation, including related common law policy concerns, the court elects to exercise its discretion to not extend supplemental jurisdiction to the remaining state-law claims.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motions will be GRANTED to the extent that the federal claims will be DISMISSED. The remaining state-law causes of action will be REMANDED to the Superior Court of New Jersey. The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: July 23, 2008

---

[2] Under 28 U.S.C. § 1367(c), District courts may decline to exercise supplemental jurisdiction where:
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.